UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| HENDERSON TRUSTY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CAUSE NO. 3:14-CV-1642-CAN |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

On June 13, 2014, Plaintiff Henderson Trusty ("Trusty"), proceeding *pro se*, filed his

complaint in this Court seeking reversal of Defendant Acting Commissioner of Social Security's

("Commissioner") determination that Trusty was no longer disabled as of June 1, 2011.   On

October 10, 2014, Trusty filed his opening brief contesting the ALJ's determination that he was

no longer disabled.   On February 5, 2015, the Commissioner filed a response requesting that the

Court affirm the Commissioner's decision.   Trusty filed no reply brief.   This Court may enter a

ruling in this matter based on the parties' consent.   28 U.S.C. § 636(c); 42 U.S.C. § 405(g).

I.    **RELEVANT BACKGROUND**

Trusty applied for and was awarded disability insurance benefits ("DIB") as of January

31, 2005,[1]  which is the comparison point decision for purposes of Trusty's instant complaint

---

[1]    The State agency disability hearing officer indicated that the comparison point decision was January 31, 2005 (Doc. No. 11 at 107).   However, the ALJ stated that the comparison point decision was September 15, 2004, in his opinion (Doc. No. 11 at 21).   The court accepts the Commissioner's position that the correct comparison point decision is January 31, 2005, recognizing that the date remains a question (Doc. No. 21 at 2 n.1).   However, this issue has no bearing on the instant matter because the ALJ considered evidence of improvement dated 2010 or later and did not rely on any evidence from the period between September 2004 and January 2005.   Therefore, the Court refrains from finding on this matter.

(Doc. No. 11 at 107).   In that determination, the Commissioner found that Trusty was disabled

as of July 1, 2004 (Doc. No. 11 at 21).   The Social Security Administration ("SSA")

subsequently conducted a required periodic review of the 2005 disability determination.   *See* 20

C.F.R. § 404.1589.   On June 13, 2011, the SSA determined that as of June 1, 2011, Trusty was

no longer disabled (Doc. No. 11 at 21, 88).   An Administrative Law Judge ("ALJ") held a

hearing regarding Trusty's disability status on February 25, 2013, and affirmed the determination

in a March 22, 2013, opinion (Doc. No. 11 at 21-34).

Trusty was born on July 19, 1966, and was a forty-six-year-old male at the time the ALJ

determined he was no longer disabled (Doc. No. 11 at 177).   He attended high school, but did

not graduate (Doc. No. 11 at 58).   Trusty performed past relevant work as a salvage operator

(Doc. No. 11 at 43).

### A.       2005 Disability Finding

SSA's 2005 finding that Trusty was disabled was based on his treatment record and the

opinions of State agency medical experts.   Trusty was twice hospitalized for mental health

problems (Doc. No. 11 at 243-51).   During a 2003 hospitalization at Eastern State Hospital in

Lexington, Kentucky, Trusty was diagnosed with psychotic disorder, not otherwise specified

(Doc. No. 11 at 246).   Trusty was discharged after his condition improved with medication (*Id.*).

During a subsequent 2004 hospitalization at Eastern State Hospital and the University of

Kentucky Medical Center, Trusty was diagnosed with alcohol dependence; alcohol withdrawal

(resolved); and psychotic disorder, not otherwise specified (Doc. No. 11 at 243-44, 250).   Dr.

Rami Kahwash's consultative medical examination report from December 12, 2004, indicated

that Trusty's complaints of back and ankle pain were likely due to a mild degree of arthritis

(Doc. No. 11 at 256).

Based on the opinions of a State agency psychologist, a consulting mental health expert, and Trusty's medical records, the SSA determined Trusty had the following medically determinable impairments as of January 31, 2005, as listed in 20 C.F.R. Part 404, Subpart P, Appendix 1: Schizophrenic, Paranoid and Other Psychotic Disorders and Substance Addiction Disorders (Doc. No. 11 at 23, 269).   Trusty's specific diagnosis was psychotic disorder, not otherwise specified within the Schizophrenic, Paranoid and Other Psychotic Disorders category (Doc. No. 11 at 66, 271).   As a result of these impairments, Trusty was found unable to sustain the concentration, pace, and persistence and social behavior necessary for a normal workday/workweek (Doc. No. 11 at 23).   During the original disability application process, a consulting physician also reported that Trusty's claims of ankle and back pain "might be due [to] a mild degree of arthritis" and that he suffered from uncontrolled hypertension (Doc. No. 11 at 256).

## B.     Medical Evidence Regarding Disability Review

The SSA subsequently undertook a periodic review of Trusty's disability status.   Trusty stridently argued that he remained disabled, claiming that he was limited by a slipped disc in his lower back, an enlarged heart, and right ankle problems (Doc. No. 11 at 189, 197).

A May 2011 consultative physical examination with Dr. Randall Coulter revealed some pain with palpation over Trusty's lumbar spine; slightly decreased range of motion in his lumbar spine; slight pain with palpation of right ankle; and minimally limited range of motion in his ankle (Doc. No. 11 at 289).   Dr. Coulter reported that Trusty may have some difficulty with lifting, bending, twisting, prolonged standing and prolonged ambulating, but his vision and

hearing were good, he communicated well, he had good muscle strength and grip strength, and he was able to perform fine and gross movements (*Id.*).

Pulmonary testing in September 2012 showed normal major airflow rates and normal diffusion, but a reduction of small airway function, which improved with bronchodilators (Doc. No. 11 at 349). A September 2012 echocardiogram indicated that Trusty had normal left ventricular systolic performance with an estimated ejection fraction of seventy to seventy-five percent, moderate concentric left ventricular hypertrophy, diastolic dysfunction, evidence of mild pulmonary hypertension with right ventricular systolic pressure estimated at forty mmHg, and no significant pericardial effusion (Doc. No. 11 at 352).

Due to the minimal nature of Trusty's treatment record, the ALJ obtained testimony from an impartial medical expert, Dr. Malcolm Brahms (Doc. No. 11 at 27-28). Dr. Brahms testified that the record revealed that Trusty's physical impairments were morbid obesity and chronic obstructive pulmonary disease (COPD) (Doc. No. 11 at 62). Dr. Brahms further testified that Trusty complained of low back pain and right ankle pain and that there were some degenerative changes in the ankle joint, but that there was no evidence of any significant joint problems (Doc. No. 11 at 62-63).

### C. Disability Review

The SSA's periodic review closed with the determination that Trusty was no longer disabled. Trusty appealed the ruling and, after a hearing, an ALJ issued a written decision reflecting the following findings based on the eight-step continuing disability review process prescribed by the SSA's regulations for determining continued disability. *See* 20 C.F.R. § 404.1594.

At Step One, the ALJ found that Trusty had not engaged in substantial gainful activity

through June 1, 2011, the date the claimant's disability ended (Doc. No. 11 at 23). At Step

Two, the ALJ found that through June 1, 2011, Trusty did not have an impairment or

combination of impairments that met or medically equaled one of the listed impairments in 20

C.F.R. Part 404, Subpart P, Appendix 1 (Doc. No. 11 at 24).

At Step Three, the ALJ found that medical improvement occurred because Trusty was

originally awarded DIB based on a decrease in the medical severity of the impairments present at

the time of the comparison point decision (Doc. No. 11 at 27). In making that determination,

the ALJ gave significant weight to the opinion of psychologist Dr. Larry Kravitz, an impartial

expert who testified that the medical record indicated that Trusty experienced medical

improvement between 2004 and 2011 (Doc. No. 11 at 67). Dr. Kravitz further testified that

there was no evidence of any significant mental impairment in those seven years (*Id.*).

Although, Dr. Kravitz did diagnose Trusty with borderline intellectual functioning and alcohol

abuse in partial remission (Doc. No. 11 at 68). The ALJ also noted that State agency psychiatric

consultants Dr. Donna Unversaw and Dr. J. Gange both opined that Trusty appeared capable of

unskilled work, indicating medical improvement (Doc. No. 11 at 298, 332). The ALJ further

observed that psychiatric consultant Dr. Alan Wax's opinion that Trusty's cognitive functioning

appeared to be in the low-average or high-borderline range did not support greater limitations

than those outlined in the ALJ's RFC (Doc. No. 11 at 29, 295). The ALJ also noted that the

record lacks any evidence of individualized psychiatric treatment or hospitalizations following

the comparison point decision (Doc. No. 11 at 29). Finally, the ALJ observed that Trusty

informed Dr. Wax that he was able to undertake basic daily activities, indicating that he cooked,

shopped, washed the dishes, did the laundry, took out the trash, and related to friends (Doc. No. 11 at 29, 294).

At Step Four, the ALJ determined that Trusty's medical improvement was related to his ability to work because it decreased the limitations included in Trusty's residual functional capacity (RFC) (Doc. No. 11 at 32). Because the ALJ determined that Trusty experienced medical improvement and the medical improvement was related to the ability to work, Step Five is irrelevant and the analysis proceeded to Step Six. 20 C.F.R. 404.1594(f)(4). At Step Six, the ALJ determined that Trusty continued to have a severe impairment or combination of impairments that caused more than minimal limitation of his ability to perform basic work activities as of June 1, 2011 (Doc. No. 11 at 32). The ALJ identified Trusty's severe impairments as COPD, borderline intellectual functioning, morbid obesity, and a history of alcohol dependence in remission (Doc. No. 11 at 23). The ALJ based this finding on the testimony of Dr. Brahms and Dr. Kravitz; the reports from Dr. Coulter, Dr. Unversaw, and Dr. Gange's consultative examinations; the opinion of Dr. Wax; and the reports of two State agency physicians, Dr. M. Ruiz and Dr. M. Brill (Doc. No. 11 at 28-31). Dr. Brahms' testimony that the evidence supports the diagnoses of COPD and morbid obesity was afforded significant weight by the ALJ as was Dr. Kravitz's testimony regarding the borderline intellectual functioning diagnosis (Doc. No. 11 at 30).

At Step Seven, the ALJ determined that as of June 1, 2011, Trusty retained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) (*Id.*). Nevertheless, the ALJ found that Trusty should never climb ladders, ropes, or scaffolds, but could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl (*Id.*). The

6

ALJ further found that Trusty must avoid even moderate exposure to extreme cold or extreme heat, wetness, humidity, environmental irritants even though Dr. Brahms testified that Trusty should avoid all pulmonary irritants and extreme temperatures due to his COPD.

Next, the ALJ found that Trusty must avoid all exposure to unprotected heights and driving while at work and is limited to simple, routine, and repetitive tasks (*Id.*). The ALJ further found that Trusty is unable to direct others, engage in abstract thought, or perform planning functions; is limited to work that involves only simple work-related decisions and routine workplace changes; cannot perform work requiring interaction with the public; and can only have occasional interaction with co-workers or supervisors (*Id.*). Despite Dr. Unversaw, Dr. Gange, and Dr. Kravitz's shared opinion that Trusty was limited to unskilled work-like tasks, the RFC did not include a limitation to "unskilled work" (Doc. No. 11 at 67, 298, 332). Additionally, the ALJ did not include a moderate limitation on concentration, persistence, or pace in the RFC despite Dr. Kravitz's testimony and Dr. Unversaw's report to the contrary (Doc. No. 11 at 66, 310). Finally, the ALJ found that Trusty is unable to perform his past relevant work as a salvage operator (Doc. No. 11 at 33).

At Step Eight, the ALJ, presented the above RFC as a hypothetical to a vocational expert (VE), who was present throughout the hearing (Doc. No. 11 at 70-71). The VE testified that an individual with the limitations included in the hypothetical could perform a significant number of jobs in the national and Indiana economy, including marker, routing clerk, and production assembler (Doc. No. 11 at 71). Finally, the ALJ considered Trusty's age, education, work experience, and RFC and determined that as of June 1, 2011, Trusty was able to perform a significant number of jobs in the national economy, including marker, routing clerk, and

production assembler (Doc. No. 11 at 33-34).

The ALJ noted in his opinion that Trusty's statements regarding the intensity, persistence, and limiting effects of his alleged impairments may not have been entirely credible (Doc. No. 11 at 28-29). As his basis for his adverse credibility finding, the ALJ pointed to a "minimal and sporadic treatment record" related to Trusty's impairments, medical and psychiatric examination results, and Trusty's inconsistent statements regarding alcohol abuse and enrollment in special education classes while in school (Doc. No. 11 at 28-29, 31).

Based on these findings, the ALJ determined on March 22, 2013, that Trusty's disability ended as of June 1, 2011 (Doc. No. 11 at 34). Trusty requested that the Appeals Council review the ALJ's decision, and on April 10, 2014, the Appeals Council denied review of the ALJ's decision making it the Commissioner's final decision. *See Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005); 20 C.F.R. § 404.981. On October 10, 2014, Trusty filed a complaint *pro se* in this Court seeking a review of the ALJ's decision (Doc. No. 1 at 1). Trusty's opening brief seeks reversal and remand of the ALJ's decision, arguing that Trusty remains disabled due to heart, skin, back, ankle, and leg problems; mental health issues; and other severe impairments (Doc. No. 14 at 4-10).

## II.    ANALYSIS

### A.    Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has

applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir.

2005). Substantial evidence is more than a mere scintilla but may be less than the weight of the

evidence. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Thus, substantial evidence is

simply "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Kepple v. Massanari*, 268 F.3d

513, 516 (7th Cir. 2001).

When reviewing a final decision of the Commissioner, a court considers the entire

administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in

evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See*

*Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). Thus, the question upon judicial review

of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act

is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal

standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d

631, 636 (7th Cir. 2013). "[I]f the Commissioner commits an error of law," a court may reverse

the decision "without regard to the volume of evidence in support of the factual findings." *White*

*ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999).

Minimally, an ALJ must articulate his analysis of the evidence in order to allow the

reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the

important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). In other words,

an ALJ must "build an accurate and logical bridge from the evidence to [his] conclusion so that

[the reviewing court] may assess the validity of the agency's final decision and afford [a

claimant] meaningful review." *Giles ex rel. Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007).

The "ALJ need not specifically address every piece of evidence" in the record, "but must present a logical bridge between the evidence and his conclusions." *O'Conner-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010) (quotations marks omitted). The ALJ must provide a glimpse into the reasoning behind his analysis and decision to deny benefits. *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001).

**B.      Continuing Disability Review Standard**

Pursuant to SSA regulations, after a disability determination, the agency must conduct a continuing disability review periodically to evaluate the claimants impairments and "determine if [the claimant is] still eligible for disability...benefits." 20 C.F.R. § 404.1589. During a continuing disability review, the agency must determine whether "there has been any medical improvement in [the claimant's] impairment(s) and, if so, whether this medical improvement is related to [the claimant's] ability to work." 20 C.F.R. § 404.1594(a). Even if the agency determines that the claimant has experienced medical improvement related to the claimant's ability to work, the agency "must also show that [the claimant is] currently able to engage in substantial gainful activity before [the agency] can find that [the claimant is] no longer disabled." *Id.*

The SSA must examine "all the evidence available in the [claimant's] case file, including new evidence concerning the [claimant's] prior or current condition." 42 U.S.C. § 423(f). Furthermore, the ALJ must consider the "claimant's condition at the time of the cessation determination, not at the time that the appeal determination is being made." *Johnson v. Apfel*, 191 F.3d 770, 774 (7th Cir. 1999).

The SSA regulations provide an eight-step inquiry to evaluate whether a claimant

remains eligible for disability benefits.   20 C.F.R. § 404.1594(f); *Johnson*, 191 F.3d at 773.

The steps are: (1) Is the claimant engaged in substantial gainful activity?   If yes, the claimant's

disability ends; (2) Does the claimant have an impairment or combination of impairments which

meets or equals the severity of a listed impairment?   If yes, the claimant's disability status

continues; (3) Has there been medical improvement, meaning a decrease in the medical severity

of the claimant's impairments, which were present at the time of the most recent favorable

decision that the recipient was disabled?   If no, the evaluation proceeds to Step Five; otherwise,

the evaluation continues to Step Four; (4) Is the medical improvement related to the claimant's

ability to work?   This step determines whether or not there has been an increase in the

claimant's residual functional capacity based on the impairments that were present at the time of

the most recent favorable disability decision.   If medical improvement is related to the ability to

work, then the evaluation proceeds to Step Six.   Otherwise, the evaluation continues to Step

Five; (5) Do any of the exceptions to medical improvement apply?   If none apply, the claimant's

disability status continues.   If one of the first group of exceptions apply, the evaluation

continues to Step Six.   If one of the second group of exceptions apply, the claimant's disability

ends; (6) If medical improvement is related to a claimant's ability to do work or one of the first

group of exceptions to medical improvement applies, are all of the claimant's impairments in

combination severe?   If no, the claimant's disability ends.   If yes, the evaluation proceeds to

Step Seven; (7) Based on the RFC and all of the claimant's current impairments, can the

claimant perform past relevant work?   If yes, the claimant's disability ends.   If no, the

evaluation proceeds to Step Eight; (8) Considering the recipient's RFC, age, education, and work

experience, can the recipient perform other work?   If yes, the claimant's disability ends.   If no,

11

the claimant's disability status continues.   20 C.F.R. § 404.1594(f)(1-9).

## C.       Issues Presented for Review

In his *pro se* opening brief, Trusty seeks reversal and remand of the ALJ's decision,

arguing that he remains disabled due to heart, skin, back, ankle, and leg problems; mental health

issues; and other severe impairments.   The Court construes Trusty's brief as arguing that (1) the

ALJ's determination that Trusty's mental impairments improved is not supported by substantial

evidence; (2) the ALJ failed to properly orient the VE to the totality of a claimant's limitations by

presenting the VE with a flawed hypothetical; and (3) the ALJ made an erroneous credibility

determination.

### 1.       The ALJ's determination that Trusty's mental impairments improved is supported by substantial evidence.

Trusty's argument that the ALJ did not support his conclusion that Trusty's mental

impairments improved since the original disability determination with substantial evidence

implicates Step Three of the eight-step continuing disability review process.   At Step Three, the

ALJ must determine whether "there has been any medical improvement in [the claimant's]

impairment(s)."   20 C.F.R. § 404.1589.   Medical improvement is "any decrease in the medical

severity of [the claimant's] impairment(s) which was present at the time of the most recent

favorable medical decision that [the claimant was] disabled or continued to be disabled."   20

C.F.R. § 404.1594(b)(1).   "A determination that there has been a decrease in medical severity

must be based on changes (improvement) in the symptoms, signs and/or laboratory findings

associated with [the claimant's] impairment(s)."   *Id.*   The ALJ may find that a disability has

ceased where there is substantial evidence demonstrating: (1) there has been any medical

improvement in the individual's impairment or combination of impairments (other than medical

improvement which is not related to the individual's ability to work); and (2) the individual is now able to engage in substantial gainful activity.   42 U.S.C. § 423(f)(1).

The impairments for which Trusty was found disabled in 2005 were psychotic disorder, not otherwise specified and substance addiction disorder.   Due to those impairments, state agency psychologist Dr. Jane Brake opined on January 31, 2005, that Trusty was unable to handle the concentration, pace, persistence, and social behavior necessary for a normal workday/workweek.

In Trusty's continuing disability review, the ALJ based his finding of medical improvement on an examination of four mental health professionals' opinions, Trusty's psychiatric treatment record, and Trusty's reports regarding his activities of daily living.   The ALJ gave significant weight to the opinion of psychologist Dr. Kravitz, who testified that the medical record indicated that Trusty experienced medical improvement because there was no evidence of any significant mental impairment in the prior six or seven years.   The ALJ also observed that the reports from Dr. Unversaw, Dr. Gange and Dr. Wax were all indicative of medical improvement.   The ALJ also noted that the record lacks any evidence of individualized psychiatric treatment or hospitalizations following the comparison point decision.   Finally, the ALJ observed that Trusty informed Dr. Wax that he was able to engage in basic daily activities.

By articulating the foregoing medical evidence, testimony, and activities of daily living reports, the ALJ supported his opinion that Trusty's mental impairments improved with substantial evidence.   The medical opinions of the consulting experts, along with the opinion of the VE that jobs existing in significant numbers in the local and national economy accommodate Trusty's remaining impairments, are substantial evidence that Trusty is now able to engage in

substantial gainful activity.   Trusty has not developed a persuasive argument otherwise.

                    2.      <u>The VE's testimony constitutes substantial evidence of the jobs Trusty can perform despite being presented with a flawed hypothetical.</u>

The ALJ must "orient the VE to the totality of a claimant's limitations." *O'Connor-Spinner*, 627 F.3d at 619.   The VE needs to understand the full extent of the applicant's disability "so that the expert does not declare the applicant capable of undertaking work in the national or local economy that the applicant cannot truly perform." *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004).

Courts have repeatedly stated that the most effective and appropriate way to ensure that the VE is fully apprised of the claimant's limitations is to include all of them directly in the hypothetical. *O'Connor-Spinner*, 627 F.3d at 619.   Courts have regarded the omission of difficulties with concentration, persistence, or pace as "more troubling" than other omissions. *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009).   While courts have not insisted on a *per se* requirement that a specific terminology, such as "concentration, persistence, or pace" be used in all hypotheticals, in most cases, "the ALJ should refer expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do." *O'Connor-Spinner*, 627 F.3d at 619-21.   Courts have let an ALJ's hypothetical omitting the terms "concentration, persistence and pace" stand when alternative phrasing specifically addressed all of the claimant's limitations.   This exception, however, is typically only allowed in cases where the limitations were stress- or panic-related or in a cases of chronic pain. *Id.* at 619.   Nevertheless, a court may assume that a VE understands the full extent of a claimant's limitations, despite an incomplete hypothetical, when the VE has

independently reviewed the medical record or heard testimony directly addressing those

limitations and was presented with a single hypothetical.   *Id.*

Here, the ALJ developed a single, complex hypothetical in an attempt to incorporate all

of Trusty's numerous limitations.   The hypothetical the ALJ presented to the VE at the hearing,

which is substantially similar to the RFC, was:

> Assume an individual of the same age, education and work
> experience as the claimant.   This individual would be limited to
> the light exertional level as, generally, defined.   The individual is
> never to climb ladders, ropes or scaffolds but is able to
> occasionally climb ramps or stairs, balance, stoop, kneel, crouch or
> crawl.   The individual is to avoid even moderate exposure to
> extreme cold or extreme heat.   The individual is to avoid even
> moderate exposure to wetness or to humidity.   The individual is to
> avoid even moderate exposure to environmental irritants, such as
> fumes, odors, dusts and gasses.   The individual is to avoid all
> exposure to unprotected heights.   The individual is prohibited
> from jobs that require driving as a function of the job.   The
> individual is limited to work that has a [sic] simple, routine and
> repetitive tasks but the individual would be unable to perform work
> that would require directing others, abstract thought or planning.
> It would involve only simple work related decisions and routine
> workplace changes.   The individual would require a job that has
> no interaction with the public and only occasional interaction with
> coworkers or supervisors.

(Doc. No. 11 at 70-71).

This hypothetical was flawed in several ways.   First, despite affording the testimony of

Dr. Brahms significant weight and noting Dr. Brahms' opinion that Trusty should avoid

pulmonary irritants and extreme temperatures due to his COPD, the ALJ's hypothetical only

required avoiding moderate exposure to environmental irritants and extreme temperatures.

However, the Court agrees with the Commissioner that this error is harmless because the jobs

identified by the VE could not expose Trusty to temperatures or irritants beyond his limitations.

15

*See* DICOT 209.587-034, 1991 WL 671802; DICOT 706.687-010, 1991 WL 679074; DICOT 222.587-034, 1991 WL 672122.

Second, Dr. Unversaw, Dr. Gange, and Dr. Kravitz all opined that Trusty was limited to unskilled work-like tasks. However, the ALJ's hypothetical does not limit Trusty to "unskilled work." The Commissioner argues that the ALJ adequately addressed this by limiting Trusty to "simple, routine, and repetitive tasks" and "simple work related decisions." The Commissioner further argues that the SSA's regulations connect the two, as the definition of unskilled work is "work which needs little or no judgment to do simple duties." 20 C.F.R. § 404.1568(a). Finally, the Commissioner argues that this is a harmless error because two of the three jobs identified by the VE are unskilled, as they both have a Specific Vocational Preparation level of two. *See* SSR 00-4P.

The ALJ's use of the alternative language of "simple, routine, and repetitive tasks" and "simple work related decisions" in the hypothetical apparently captured the unskilled work requirement suggested by the medical experts as evidenced in the VE's identification of two unskilled jobs for Trusty. Furthermore, the VE, who was present at the hearing, was probably influenced by Dr. Kravitz's testimony that Trusty was limited to unskilled work when considering jobs that Trusty could perform. Most importantly, two of the three jobs identified by the VE are classified as unskilled in the Dictionary of Occupational Titles. *See* DICOT 209.587-034, 1991 WL 671802; DICOT 706.687-010, 1991 WL 679074. Therefore, the ALJ's failure to include "unskilled work" as a limitation in the hypothetical is, at most, a harmless error.

Finally, the ALJ did not include a moderate limitation on concentration, persistence, or

16

pace in his hypothetical despite its inclusion in Dr. Kravitz's testimony and Dr. Unversaw's

report.   The Commissioner claims these limitations were accounted for by limiting Trusty to

simple, routine, and repetitive tasks; simple work-related decisions and routine workplace

decisions; and work that would not involve the directing of others, abstract thought, or planning.

Here the Commissioner's argument is unconvincing.   The courts have been clear that the

omission of limitations on concentration, persistence, or pace in hypotheticals presented to VEs

is troubling and generally grounds for a remand.   *O'Connor-Spinner*, 627 F.3d at 620-21.

Courts have allowed alternative phrasing, but generally only in stress- or panic-related cases or

in a cases of chronic pain, neither of which plague Trusty.   *See Id.* at 619-20.

Nevertheless, the Court refuses to remand.   As the Commissioner notes, the VE was

present for the entirety of the hearing, heard the all the testimony offered, and was given only a

single hypothetical.   As a result, the Court assumes that the VE understood the full extent of

Trusty's limitations based on the information presented at the hearing.   *See Id.* at 619.

For the forgoing reasons, the Court finds that the VE's testimony constitutes substantial

evidence of the jobs that Trusty can perform despite the ALJ's presentation of a flawed

hypothetical.

3.       The ALJ's credibility determination was not patently wrong.

In assessing a claimant's subjective symptoms, particularly pain, the ALJ must follow a

two-step process.   SSR 96-7p.   First, the ALJ must determine whether there is a medically

determinable impairment that can be shown by acceptable medical evidence and can be

reasonably expected to produce the claimant's pain or other symptoms.   *Scheck v. Barnhart*, 357

F.3d 697, 701 (7th Cir. 2004).   Second, after showing an underlying physical or mental

impairment that could reasonably be expected to produce the claimant's pain or other symptoms, the ALJ must evaluate the intensity, persistence, and limiting effects of the impairment to determine the extent to which the symptoms limit the claimant's ability to work. *Scheck*, 357 F.3d at 701. When a claimant's statements about the symptoms and limitations of their impairment are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on consideration of the entire case record. SSR 96-7p; *see also Scheck*, 357 F.3d at 701.

An ALJ's decision regarding a claimant's credibility must contain specific reasons for the finding on credibility, be supported by evidence in the record, and be sufficiently specific to make clear to the claimant and to any subsequent reviewers the weight the ALJ gave to the claimant's statements and the reasons for that weight. SSR 96-7p; *see also Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012). "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." SSR 96-7p. A reviewing court merely examines "whether the ALJ's determination was reasoned and supported." *Shideler v. Astrue*, 688 F.3d 306, 311 (7th Cir. 2012). Because an ALJ is in a special position to hear, see, and assess witnesses, her credibility determinations are given special deference and will only be overturned if they are patently wrong. *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013).

In determining the credibility of Trusty's testimony regarding the symptoms associated with his impairments, the ALJ concluded that his medically determined impairments could reasonably be expected to cause the alleged symptoms. However, the ALJ found that Trusty's testimony and statements to the SSA and medical experts concerning the "intensity, persistence

18

and limiting effects of the alleged symptomology [sic] is not accepted because the claimant's allegations are not consistent with the medical evidence available" to the ALJ.

The ALJ based this credibility determination on Trusty's treatment record, the medical and psychiatric evaluations conducted during the disability review, and inconsistencies in Trusty's testimony and statements to medical profesionals.   First, the ALJ pointed to a "minimal and sporadic treatment record" related to Trusty's impairments.   Next, the ALJ indicated that results from medical and psychiatric examinations did not suggest a need for greater restrictions than those contained in the RFC.   Finally, the ALJ found that Trusty's inconsistent statements regarding alcohol abuse and enrollment in special education classes while in school suggested that the information obtained from Trusty may not have been entirely reliable.

The ALJ's credibility determination contained specific reasons, supported by evidence in the record, for his credibility determination.   Consequently, the ALJ effectively articulated reasons for finding Trusty's testimony regarding the intensity, persistence, and limiting effects of his impairments not credible. Moreover, the ALJ's opinion sufficiently specifies the weight given to Trusty's testimony and the reasons for that weight.   Therefore, this Court finds that the ALJ's credibility determination is not patently wrong and may not be overturned.

III.    CONCLUSION

For the reasons stated above, the Court finds that (1) the ALJ's determination that Trusty's medical impairments have improved is based on substantial evidence; (2) the VE's testimony constitutes substantial evidence of the jobs Trusty can perform despite the ALJ's flawed hypothetical; and (3) the ALJ provided sufficient reasoning and support in determining Trusty's credibility such that his credibility determination is not patently wrong.   Therefore, the

Court finds that the ALJ's conclusion that Trusty was no longer disabled as of June 1, 2011, is supported by substantial evidence.

Accordingly, this Court **AFFIRMS** the ALJ's finding that Trusty's disability ended as of June 1, 2011, pursuant to sentence four of 42 U.S.C. § 405(g) [Doc. No. 14]. The Clerk is instructed to term the case and enter judgment in favor of the Commissioner.

**SO ORDERED.**

Dated this 15th day of June, 2015.

s/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge
